**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **DANIEL LOPEZ,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:18-cv-430** |
| | § | |
| **CITY OF CORPUS CHRISTI, AND** | § | |
| **ALBERTO S. GONZALEZ, IN HIS** | § | |
| **OFFICIAL AND INDIVIDUAL** | § | |
| **CAPACITY** | § | |
| **DEFENDANTS.** | § | **JURY TRIAL** |

---

**DEFENDANT CITY OF CORPUS CHRISTI'S**
**MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES the City of Corpus Christi, Defendant in the above-referenced suit, and files

this its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.   STATEMENT OF THE CASE

1.      Plaintiff, DANIEL LOPEZ, (hereinafter, "Plaintiff") has filed suit against the CITY

OF CORPUS CHRISTI (hereinafter, the "City")  pursuant to 42 U.S.C. § 1983 alleging the City

is liable because: [1] it sanctions, or has sanctioned, the customs, practices and/or policies or

procedures that allow for fourth amendment right violations of false arrest and unreasonable search

and seizure; and, [2] it failed, by and through its Police Department (hereinafter, the "Department"

or "CCPD"), to provide adequate training which led to the unlawful arrest and detention of

Plaintiff. (*D.E. #14, ¶¶ 31-43*).

1

2.      The City moves for summary judgment, outlining this statement of the issues:

[1]     Defendant Officer Alberto S. Gonzalez (hereinafter, "Officer Gonzalez") did not falsely arrest Plaintiff on December 31, 2016; additionally, Officer Gonzalez did not violate any of Plaintiff's constitutional rights;

[2]     In the alternative, even if some aspect of the officer's conduct was deemed to have violated Plaintiff's constitutional rights, no official custom or policy of the City caused said violation and Plaintiff has no evidence to support his claim; and

[3]     The City did not fail to train its officer(s) on lawful arrests or the application of reasonable force.

[4]     The City did not fail to supervise its officer(s).

This motion is based on the following attached evidence:

Exhibit 1:     Affidavit of Lisa Newell (hereinafter, "Newell Aff."), and exhibit attached thereto (hereinafter, "Ex. 1-A").

Exhibit 2:     Affidavit of Denise Pace (hereinafter, "Pace Aff."), and exhibits attached thereto (hereinafter, "Ex. 2-A," "Ex. 2-B", etc.)

Exhibit 3:     Affidavit of James Lerma (hereinafter, "Lerma Aff."), and exhibit attached thereto (hereinafter, "Ex. 3-A").

Exhibit 4:     Affidavit of Daniel T. Perez (hereinafter, "Perez Aff.") and exhibit attached thereto (hereinafter, "Ex. 4-A").

Exhibit 5:     Affidavit of Albert Gonzalez (hereinafter, "Gonzalez Aff.").

Exhibit 6:     Affidavit of Keane Monroe (hereinafter, "Monroe Aff."), and exhibit attached thereto (hereinafter, "Ex. 6-A").

Exhibit 7:     Transcript for Deposition of Daniel Lopez (hereinafter, "Lopez Depo"), taken on May 30, 2019 (select excerpts).

Exhibit 8:     Transcript for Deposition of Albert Gonzalez (hereinafter, "Gonzalez Depo"), taken on May 30, 2019 (select excerpts).

2

Exhibit 9:      Notice of Appearance, filed on March 21, 2018, in Cause No. 16MC-02672, certified true and correct by the Nueces County District Clerk.

Exhibit 10:     Capias issued November 16, 2016 by the State of Texas in Cause No. 16MC-02672 for Daniel Lopez, certified true and correct by the Nueces County District Clerk.

Exhibit 11:     Verification of Lilia K. Castro

## II.   FACTUAL SUMMARY

3.      Around 11:36 p.m., on the evening of December 31, 2016, the CCPD Gang Unit (hereinafter, "Gang Unit") had knowledge that Plaintiff was a wanted subject. (*Newell Aff., Ex. 1-A, at 3; Gonzalez Aff., ¶¶ 4-5; Gonzalez Depo, p. 13: lines 16-18*).  Officer Gonzalez, along with Officer Israel Carrasco (hereinafter, "Officer Carrasco"), who was also a member of the Gang Unit, traveled to Plaintiff's last known address. (*Ex. 1-A, at 3; Gonzalez Aff., ¶ 6*). Officer Gonzalez observed Plaintiff sitting in a vehicle outside the residence, and he, along with Officer Carrasco approached the Plaintiff. (*Ex. 1-A, at 3*).  After Plaintiff identified himself, Officer Gonzalez checked Plaintiff's name through the information channel, pulling up an active warrant for dangerous drugs out of Nueces County, specifically #CRMC02672. (*Ex. 1-A, at 3*).

4.      Officers Gonzalez and Carrasco then placed Plaintiff into custody where he was later transported to the Corpus Christi City Detention Center (hereinafter, the "CDC"). (*Ex. 1-A, at 3, 5*).  At approximately 12:19 a.m. on January 1, 2017, Plaintiff was booked at the CDC, (*Monroe Aff., Ex. 6-A*), a Property Form was taken by CDC personnel, (*Ex. 6-A, at 2 and 3*), and an "Inmate Medical Screening Report" completed. (*Ex. 6-A, at 4*).  CDC officers, however, were unable to procure Nueces County's confirmation on the active warrant through the County's

3

computerized system, (*Ex. 1-A, at 3*) (*Ex. 6-A, at* 1), and so, at approximately 1:17 a.m., Plaintiff was released back to Officer Gonzalez's custody, (*Ex. 6-A, at 1*), at which point Plaintiff was transported to his residence. (*Ex. 1-A, at 3*).

5.       A few weeks later, on January 19, 2017, while being processed by the Nueces County Sheriff's Office on a different warrant, Plaintiff was also processed and booked on the warrant 16MC-02672, which was the active warrant CDC personnel could not get confirmed by the County on December 31, 2016. (*Perez Aff., Ex. 4-A, at 1, 11*; *Ex. 10*).  Plaintiff posted bond for that warrant and was subsequently released by the County. (*Ex. 4-A, at 3, 9-11*).  Plaintiff's criminal proceedings related to warrant 16MC-02672 were pending until earlier this year.[1]

### III.   SUMMARY JUDGMENT STANDARD

6.       Under Federal Rule of Civil Procedure 56(c), the movant bears the initial burden of informing the district court of the basis of its motion and identifying those portions of the summary judgment record that it believes demonstrate the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  When the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. This burden is neither satisfied by some metaphysical doubt as to the material facts, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), nor is it discharged by conclusory allegations, *Lujan v. National Wildlife Federation*,

---

[1]   Interestingly, while Plaintiff clearly states in para. 16 of his First Amended Petition that "there was no outstanding warrant for Plaintiff's arrest for a parole violation"; records from the Nueces County Sheriff's Office and the District Clerk undoubtedly demonstrate that Plaintiff had knowledge of this warrant, posted bond, and coincidentally Plaintiff's Counsel in the present suit, also represented him in his criminal proceedings directly related to the warrant at issue.  (*Ex. 9*).

497 U.S. 871, 888-89 (1990), or by only a scintilla of evidence, *Davis v. Chevron USA, Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

7.      In the absence of any proof, the court does not assume the nonmoving party could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan*, 497 U.S. at 888). Resolving actual disputes of specific, material facts in favor of the nonmoving party is worlds apart from assuming general averments embrace the specific facts needed to sustain the complaint. *Lujan*, 497 U.S. at 888. It will not do to presume missing facts because without them the affidavits would not establish the injury generally alleged. *Id.* at 889.

8.      Where the movant is seeking summary judgment on a cause of action or element over which the non-movant bears the burden of proof, the movant is not required to disprove that cause of action or element; it is sufficient for the movant to point out the absence of evidence to support that aspect of the non-movant's case. *Celotex*, 477 U.S. at 323-24. Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

## IV.   <u>ARGUMENTS AND AUTHORITIES</u>

9.      The City is entitled to summary judgment in its favor. Officer Gonzalez clearly did not violate Plaintiff's constitutional rights on December 31, 2016. Alternatively, even if there had been such a violation, it certainly did not occur pursuant to an official custom or policy of the City, and Plaintiff cannot point to any evidence that reveals otherwise. Without a causal connection between the alleged violation and an official custom or policy, liability cannot be imposed on the

City under 42 U.S.C. 1983. *Monell v. New York Department of Social Services,* 436 U.S. 658, 690 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385-87 (1989).

**A.**   ***Standard for Section 1983 Liability for Municipalities*.**

10.    Plaintiff brings forth a civil action under §1983, which does not create substantive rights, but merely provides a damages remedy for the deprivation of existing constitutional or federal statutory rights, *see Wilson v. Garcia*, 471 U.S. 261, 278 (1985), imposing civil liability upon one, and only one:

> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

42 U.S.C.S. § 1983.  Municipalities are not vicariously liable for the actions of their employees under § 1983; it is well established that a municipality cannot be held liable on the theory of *respondeat superior*.  *Monell*, 436 U.S. at 692-94.  Instead, municipal liability inures only when the execution of a local government's policy or customs causes the injury. *Id*.  The Fifth Circuit requires a plaintiff plead "facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

11.    For starters, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws[,]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979), and the Plaintiff has not, and cannot, demonstrate that he suffered constitutional

harm, or that he otherwise suffered a deprivation under federal law.  Putting that aside for a

moment, the City acknowledges that a municipality may be liable under § 1983 if the execution of

one of its customs or official policies deprives a plaintiff of his constitutional rights.  *Monell*, 436

U.S. at 660-61.  The requirement of "official policy" is designed "to distinguish acts of the

*municipality* from acts of *employees* of the municipality, and thereby make clear that municipal

liability is limited to action for which the municipality is actually responsible." *Pembar v.*

*Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).  Stated differently, municipal liability

is "limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the

municipality has officially sanctioned or ordered." *Id.* at 480.

12.   "Official policy" is defined as:

a.   A policy statement, ordinance, regulation, or decision that is officially
adopted and promulgated by the municipality's lawmaking officers or by an
official to whom the lawmakers have delegated policy-making authority; or

b.   A persistent, widespread practice of city officials or employees, which,
although not authorized by officially adopted and promulgated policy, is so
common and well settled as to constitute a custom that fairly represents
municipal policy.  Actual or constructive knowledge of such custom must be
attributable to the governing body of the municipality or to an official to
whom that body had delated policy-making authority.  Actions of officers or
employees of a municipality do not render the municipality liable under §
1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).  As Plaintiff has not alleged any

formally announced policy adopted by the City to violate the rights of citizens, he must

demonstrate a "persistent widespread practice of city officials or employees which although not

authorized by officially adopted and promulgated policy, is so common and well settled as to

constitute a custom that fairly represents municipal policy." *Id.*

**B.**   ***Officer Gonzalez Did Not Violate Plaintiff's Constitutional Rights.***

13.    Plaintiff pleads Officer Gonzalez "arrested Plaintiff on an unverified suspicion that Plaintiff was a warrant subject[ ]"; "did not verify or confirm his unsubstantiated suspicion before he pulled Plaintiff from his vehicle[ ]"; and, "did not ask or inquire of his police department dispatch if there was an open outstanding warrant[.]" (*D.E. # 14, ¶ 18*). Plaintiff further contends "no charges were ever filed against Plaintiff consistent with his arrest[,]" and "no action was taken against Plaintiff based upon [Officer] Gonzalez's unverified or unsubstantiated spurious believe[sic] that Plaintiff was a 'warrant suspect.'" (*D.E. # 14, ¶ 19*). Every one of these assertions is directly contradicted by the summary judgment record, and there is no evidence to support them.

14.    The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.   The City fully acknowledges that individuals have a clearly established right to be free from unlawful arrests. *See e.g.*, *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992).  Under the Fourth Amendment, police officers are required to make a probable cause determination before performing a custodial arrest. *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991).  A police officer has probable cause to arrest if, at the time of the arrest, he had "knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Id.* (citation omitted).

15.    The constitutional reasonableness of reliance by law enforcement officers on electronic means of communication (i.e., a computerized warrant database) as sufficient to

establish probable cause for an arrest is settled law. *See Herring v. United States*, 555 U.S. 135, 146 (2009); and *Arizona v. Evans*, 514 U.S. 1, 15–16 (1995).  Before placing Plaintiff under arrest, in order to determine whether a valid arrest warrant existed, Officer Gonzalez searched a computer database using the terminal located in his patrol car. (*Ex. 8, p. 14, lines 1-3*).  That search yielded an active arrest warrant for a drug-related offense. (*Id.*).  The CCPD's dispatch information channel was then radioed to verify Plaintiff's date of birth and the existence of the warrant. (*Ex. 8, p. 18, lines 3-6*).  There is not a scintilla of evidence that the Department was reckless in maintaining or utilizing the warrant system, or that officers knowingly made false entries to lay the groundwork for false arrests. *Herring*, 555 U.S. at 146.  Accordingly, Officer Gonzalez did not act in an objectively unreasonable way by relying upon the computer record and dispatch information.

16.     During his deposition testimony, Plaintiff was played a video recording from the back-seat camera in Officer Gonzalez's police vehicle—the footage depicting the interaction between Plaintiff and officers following his arrest. (*Ex. 7, p. 44, lines 5-25; p. 45, lines 1-7; Ex. 1-* [*Video*]).  After viewing the recording, Plaintiff was asked:

> Q:   And then [Officer Gonzalez] said, "Yours is a drug charge, so it's not going to be much." Do you remember hearing that on the video?
>
> A:   I hear it—I heard it, yes, ma'am.
>
> Q:   And then at some point he confirmed that the warrant was a November 16th warrant. Right?
>
> A:   I also heard that also, yes, ma'am, I heard it.
>
> Q:   Okay. So he did communicate to you that he believed that there was a warrant, a November 16th warrant, and that's the reason why you were arrested. Right?
>
> A:   Yes.

(*Ex. 7, p. 45; lines 17-25; p. 46: lines 1-5*).   The summary judgment evidence attached hereto leaves no doubt there was an active capias warrant, #16MC-02672, issued on November 16, 2016, (*Ex. 10*), which is the same warrant cited in Officer Gonzalez's Incident Report, (*Ex. 1-A, at 3*), referenced in the Arrest Report and Probable Cause statement, (*Ex. 1-A, at 4-5*), and the same arrest warrant Officer Gonzalez executed on December 21, 2016, (*Ex. 8, p. 24: lines 6-19*). Confronted with the actual warrant and other supporting documentation, Plaintiff admitted that his true grievance was the officers' failure to provide him with a copy of the warrant at the scene:

> Q:   Okay. So would you agree with me today, Mr. Lopez, that there was an arrest—that there was a warrant out for your arrest on December 31st, 2016?
>
> A:   It shows that there was, but, like I said, it was not preserved -- presented to me.
>
> . . .
>
> A:   [ . . .] It wasn't shown to me. Why wasn't it shown to me? If he had it, why wasn't it shown to me?
>
> Q:   Okay. So if I understand your testimony correctly, you're complaining that you weren't handed a paper?
>
> A:   Yeah. I mean—
>
> . . .
>
> Q:   So, again, your issue is that you were not shown the physical paper?
>
> A:   That's correct.

(*Ex. 7, p. 66: lines 8-12; p. 73: lines 1-6; p. 75: lines 10-12*).   No legal authority, of which the City is aware, stands for the proposition that the Fourth Amendment requires an officer to have physical possession of the warrant before an arrest may take place. *C.f.*, *Barnes v. Madison*, 79 Fed.Appx. 691, 703 (5th Cir. 2003) (no such requirement, and "an arrest is legal if the officer acts under the

authority of a warrant of which he or she has reliable knowledge") (citing *United States v. McDonald*, 606 F.2d 552, 553–54 (5th Cir. 1979). Federal and Texas law, in fact, explicitly authorize arrests with only knowledge, rather than actual possession, of an arrest warrant.[2] *See* TEX. CODE CRIM. PRO. ART. 15.26 ("The officer need not have the warrant in his possession at the time of the arrest . . ."); *see also* FED. R. CRIM. P. 4(c)(3)(A). The arrest in question was made under the authority of a warrant, and it was made with probable cause. Moreover, there is no genuine dispute over #16MC-02672's apparent validity. Plaintiff's grievance that he was not handed a printout of the warrant when arrested, does not amount to a constitutional violation.

17.    An extremely liberal interpretation of Plaintiff's Amended Petition might suggest he also alleges Officer Gonzalez used excessive force in effectuating the arrest (*D.E. # 14, at pp. 3-4, ¶¶ 13-14*; *p. 9, ¶ 33*; and, *p. 10, ¶ 43*); therefore, out of an abundance of caution, the City will address that argument here. A claim that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen must be analyzed under the Fourth Amendment and its objective reasonableness standard, rather than under other constitutional grounds. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

18.    Fully rejecting Plaintiff's stance with respect to excessive force, the City maintains that Officer Gonzalez's actions on December 31, 2016 were "objectively reasonable" in light of the facts and circumstances then confronting him. There is no evidence from which to conclude

---

2    Article 15.26 further provides: "[i]f the officer does not have the warrant in his possession at the time of arrest he shall then inform the defendant of the offense charged and . . . that a warrant has been issued." Rule 4(c)(3)(A) provides: "[i]f the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged[.]" It should be undisputed that Officer Gonzalez acted accordingly. Such compliance was recorded and conceded by Plaintiff. (*Ex. 1*; *Ex. 7, p. 45: lines 17-25; p. 46: lines 1-5*).

the collective actions of Officer Gonzalez and the other officers present at the scene on the evening of December 31, 2016, were anything but objectively reasonable.  As Plaintiff cannot adduce any evidence to support his contention that Officer Gonzalez's use of force was clearly excessive and objectively unreasonable—there can be no finding of a constitutional violation.

19.     In the unlikely event this Court deems that a wrong was inflicted upon Plaintiff in violation of his constitutional rights, the City asserts there is no genuine issue of fact as to whether there existed a City policy or custom that, when carried out, inflicted the injury.

**C.     _The City Does Not Have a Policy, Procedure, or Custom of Allowing Officers to Make Unlawful Arrests or to Use Excessive or Unreasonable Force._**

20.     In order to establish a constitutional cause of action against a municipality under § 1983, a plaintiff must prove that: (a) some right protected by the United States Constitution was violated; and (b) that violation was caused by a governmental custom or policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's policymakers. _See, Monell_, 436 U.S. at 690.  A "custom or policy" may take the form of either: (1) a single unconstitutional act by a policymaker, or (2) a pattern of conduct by a non-policymaker.  _Zarnow v. City of Wichita Falls, Tex._, 614 F.3d 161, 169 (5th Cir. 2010).  As Plaintiff's First Amended Complaint does not allege an unconstitutional act by a policymaker, the Plaintiff must, at least, allege that there was a pattern of conduct by non-policymaker(s) that "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." _Webster_, 735 F.3d at 842.

21.     Allegations sufficient to establish a pattern require similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.  *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).  Furthermore, a pattern requires "sufficiently numerous prior incidents" and not just "isolated incidents." *Id*.  The Fifth Circuit has set the bar very high for the number of prior incidents necessary for a finding of municipal liability.  *See id.*, 588 F.3d at 851 (twenty-seven previous complaints not sufficient); *Pineda v. City of Hous.*, 291 F.3d 325, 329-30 (5th Cir. 2002) (no custom from eleven previous incidents).  Notice of a pattern of similar violations that point to the specific violation in question is required.  *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Bryan County v. Brown*, 520 U.S. 397, 411 (1997).

22.     Irrespective of Plaintiff's assertions that his December 31, 2016 arrest was without a warrant or probable cause—the summary judgment record establishes the arrest was made pursuant to an active, outstanding warrant populated in the computerized warrants database on the date in question.  At best, Plaintiff's blatant efforts to "side-step" the existence of the November 16th capias warrant by representing to this court that no arrest warrant existed, is somewhat perplexing.  At worst, it is deeply troubling.  Plaintiff can no more meet the second prong to show that a constitutional violation resulted from a City custom or policy, than he can demonstrate his rights were violated at all.

23.     Assuming Plaintiff alleges the City has a policy or custom of using excessive force to effectuate arrests, here, Plaintiff can posit no evidence of a City custom or policy that permits its officers to use excessive/unreasonable force at any time.

24.     The City is therefore entitled to summary judgment because the record does not raise a genuine issue of material fact regarding the second essential element of Plaintiff's claims against the City, i.e., the existence of an official custom or policy that caused the alleged violation.

### i.    There is no continuing and pervasive pattern of, nor does the City sanction, ratify, or acquiesce in, unlawful arrests or the use of excessive force.

25.     Plaintiff's assertions that his purported injury resulted from the City's policies, customs, or practice are unavailing.  Plaintiff might appear to be arguing, albeit in a wholly conclusory fashion, that there is a continuing and pervasive pattern of civil rights abuses, including unreasonable seizures and the use of excessive force on citizens by the City's police officers. (*D.E. # 14, ¶ 37*).  Plaintiff might also insist the City has a common and well-settled custom of encouraging, acquiescing, sanctioning, and ratifying its officers' constitutional violations, and that this subjects the City to liability for the alleged constitutional violation of Plaintiff's Fourth Amendment rights. (*D.E. # 14, ¶¶ 37-38*).

26.     Such sweeping claims, assuming it is Plaintiff's intention to make them, are without any foundation in fact, and Plaintiff can offer up no summary judgment evidence that the City had such policies.  On the contrary, the City mandates that "[a]ll seizures by this Department will comply with relevant federal and state law governing the seizure of persons and property[,]" (*Pace Aff., Ex. 2-B, at 1*), and forbids its police officers from using excessive force, as categorically validated by the affidavits and exhibits offered herewith. (*Pace Aff., Ex. 2-A, at 1-2; and Lerma Aff. ¶¶ 15-18*).  The CCPD's Policy Manual is applicable to all CCPD Officers, and the version in effect on the date in question contained entire policies dedicated to field officer selection, training, and supervision, the proper use of force, warrantless arrests and probable cause analysis, as well

14

as conduct and performance. (*Pace Aff., ¶ 3; Ex. 2-A; Ex. 2-B; Ex. 2-C; Ex. 2-D; Ex. 2-E*).  The City had, and continues to have, a number of policies devised to prevent illegal seizures, limit the use of force and require investigations into the use of force, including claims of excessive force.  *See Castillo v. City of Corpus Christi*, No. C-11-93, 2012 WL 1308992, at *20-21, 27-28 (S.D. Tex. Apr. 16, 2012).

27.     Even if the overwhelming evidence in the summary judgment record pertaining to the warrant could somehow be discounted—the Plaintiff cannot prove a pattern of violations that point to the specific illegal seizure claim he alleges.  To the extent the following assertion: "[t]housands of arrests are made by the City police department each year and arrests for parole violations are part of that total . . ." (*D.E. # 14, ¶ 28*), may be interpreted as such an attempt, it clearly fails to advance the requisite similarity and specificity to render a custom or pattern.

28.     Again, Plaintiff does not endeavor to plead a single prior case similar to the incident at issue, much less provide details of any such instance sufficient to establish a custom or policy.  The legal precedent cited above makes clear that to state a claim for relief against a municipality for an unwritten policy or custom of condoning unconstitutional acts by a policy officer, a plaintiff must plead and prove prior incidents of similar acts.  *See e.g., City of Canton,* 489 U.S. at 391-92. The City does not have a policy, written or otherwise, of encouraging, acquiescing, sanctioning or permitting its officers to illegally seize persons or to use excessive force upon its citizens.  When a complaint is substantiated, corrective action is taken. (*Pace Aff., Ex. 2-F, at 8*).

29.     The City is entitled to summary judgment also to the extent Plaintiff contends the City has a custom, practice, and/or policy of failing to train its officers, thereby sanctioning and/or

15

ratifying their unconstitutional conduct.  Such account would hold that the City created a policy of permitting unlawful arrests and the use of excessive force; however, a law enforcement agency does not ratify unconstitutional conduct simply by believing the officer's plausible denials that it occurred. *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986). The City does not have a custom, practice, or policy of failing to train officers, or failing to discipline officers found to have made unlawful arrests or engaged in excessive force, and Plaintiff can offer no summary judgment evidence sufficient to support a finding to the contrary. (*Lerma Aff., ¶¶ 4-11*).  There is no evidence that the City acted with deliberate indifference towards Plaintiff's Fourth Amendment rights.  As outlined below, there is no pattern of subjecting citizens to unlawful arrests or excessive force, much less a showing that policymakers knew about or accommodated such conduct.

30.     Assuming *arguendo* that Officer Gonzalez violated Plaintiff's constitutional right, a municipality's decision not to discipline an officer who is accused of excessive force does not demonstrate and/or establish that the municipality has a policy, custom or practice of ratifying unconstitutional conduct.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) (emphasizing that [s]imply going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy); *see also*, *Peterson v. City of Fort Worth*, 588 F.3d 838, 848, n. 2 (5th Cir. 2009); *Bryan County*, 520 U.S. at 410-11; and*, generally, Ledbetter*, 780 F.2d at 1161-62 (stating that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality).

31.     Summary judgment is appropriate as Plaintiff cannot raise a material issue of fact regarding this aspect of Plaintiff's claim.

**ii.** **The City did not fail to train its officers, and/or did not provide inadequate training to its officers on lawful arrests.**

32.     Summary judgment is appropriate also as to Plaintiff's claim against the City that Officer Gonzalez "has not been specifically trained on what steps, if any, he should undertake regarding his unsubstantiated subjective belief that an unfounded outstanding warrant for a parole violation exists for a named individual[,]" (*D.E. #14, ¶ 24*), been given "limited specialized training requirements for its gang unit members . . [on] certain arrest scenarios, even obvious arrest scenarios encountered by Plaintiff[,]" (*D.E. #14, ¶ 27*), and "when to affect an arrest upon an individual." (*D.E. #14, ¶ 41*).

33.     To establish a claim that the City is liable for the alleged constitutional violations by Officer Gonzalez because his training was inadequate, Plaintiff has a heavy burden.  Plaintiff must prove: (1) that the City's training was inadequate to train its officers to carry out their duties; (2) that the need for more training or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need for such training; and, (3) that the failure to provide proper training was a cause of injury to the plaintiff. *See City of Canton*, 489 U.S. at 388-90; *see also, Sanders-Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010) (citing *Pineda*, 291 F.3d at 332). Deliberate indifference is a stringent standard of fault which requires proof that a municipal actor disregarded a known or obvious consequence of his action. *See Board of County Comm'rs. of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

34.     It bears repeating that the arrest here at issue was made pursuant to a capias warrant showing active in a warrants database, not an "unsubstantiated" or "unfounded" *belief of a*

*warrant*, and moreover, the Possession of Controlled Substance offense was charged by Complaint and Information in the Nueces County Court at Law No. 1. (*Ex. 9*; *Ex. 10*).  Any problem "confirming" the November 16, 2016 warrant with the Nueces County Sheriff's Office in the hour following Plaintiff's arrest was due to an issue with Nueces County's computer system, (*Ex. 1-A, at 3*), does not evince that the warrant did not exist, does not evince a deficiency with the warrant, and certainly does not eviscerate probable cause supporting the arrest.

35.     Police officers are adequately trained if the training enables officers to respond properly to the usual and recurring situations with which they must deal. *City of Canton,* 489 U.S. at 391.  While Plaintiff may allege that more or better training of police officers in the use of force could have prevented the incident, such an allegation, even if proven, does not establish that the need for such training was open and obvious. *Id.*  As the United States Supreme Court articulated:

> [n]either will it suffice to prove that an injury or accident could have been avoided
> if an officer had had better or more training, sufficient to equip him to avoid the
> particular injury-causing conduct. Such a claim could be made about almost any
> encounter resulting in injury, yet not condemn the adequacy of the program to
> enable officers to respond properly to the usual and recurring situations with which
> they must deal.

*Id.* A law enforcement agency whose training meets state standards and requirements cannot be liable for failure to train under § 1983. *See Connor v. Travis County, Texas*, 209 F.3d 794, 798 (5th Cir. 2000); *Benavides v County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992) (recognizing that deputies were adequately trained as they had successfully completed the minimum training required by state law and had been certified by the State of Texas).

36.     As applied to the case at bar, the summary judgment evidence demonstrates that Department officers in general, and, in particular, Officer Gonzalez is more than adequately trained

today, and the same held true on December 31, 2016. (*Lerma Aff., ¶¶ 12-18*).  Officer Gonzalez

holds a peace officer license issued by the Texas Commission on Law Enforcement (TCOLE),

was—on December 31, 2016—competently trained through a TCOLE-certified program,

including courses on "Constitutional Policing", "Computer-based Offender Tracking", and

intermediate courses on "Arrest, Search & Seizure." (*Ex. 3-A*).  The exhibits attached hereto evince

how the Department's officers undertake a training regimen that substantially exceeds the

standards required even by TCOLE. (*Lerma Aff., ¶¶ 4-11*; *Ex. 3-A*).   The evidence thus

conclusively demonstrates that the City's training program in general, and the training of Officer

Gonzalez, specifically, was more than suitable to meet the requirements of the Constitution.  There

is no evidence that so much as intimates the possibility of inadequate training, or that suggests lack

of training played any part whatsoever in the events of December 31, 2016.

### iii.   The City did not fail to train its officers, and/or did not provide inadequate training to its officers, on the use of force.

37.   The Plaintiff has also failed to raise a factual dispute material to deciding whether

the CCPD's training practices reflect a policy or custom of condoning its officers' use of excessive

force, if such is his intent.  Again, Plaintiff has a heavy burden to prove the City is liable for alleged

constitutional violations because Officer Gonzalez's training as to reasonable force was

inadequate.  Additionally, the Fifth Circuit has pronounced "that proof of a single violent incident

ordinarily is insufficient to hold a municipality liable for inadequate training." *Snyder v.*

*Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).  Instead, a plaintiff must demonstrate at least a

pattern of similar incidents in which the citizens were injured . . . to establish the official policy

requisite to municipal liability under § 1983. *Id*. at 798-99 (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989).

38.     In addition to the courses listed previously, the TCOLE training routine for CCPD officers like Officer Gonzalez includes also core and intermediate courses on the "Use of Force." (*Ex. 3-A*).    Once more, this is evidence that the City's training program was by no means inadequate, much less formulated with deliberate indifference to citizens' constitutional right to be free from unreasonable seizures.   Contrary to the Plaintiff's conclusions, among other things, the City's written policy manual requires strict observance of the constitutional rights of its citizens (*Ex. 2-B, at 1*); authorizes officers to use *only* appropriate, reasonable force to effect an arrest, search or overcome resistance, (*Ex. 2-A, at 2*); and, prohibits unbecoming conduct, including unjustified behavior, unnecessary and unwarranted violence to a citizen. (*Ex. 2-F, at 1-5*). Department policies existing on the date of Plaintiff's alleged injury were sufficiently broad to govern the subject matter of the training Plaintiff claims was lacking.   Such training addressed patrol procedure, mechanics of arrest, criminal law, use of force, and supervision responsibility. (*Lerma Aff., ¶¶ 7, 10, 13; Ex. 3-A*).   The City had more than ample cause to believe its Officer understood CCPD's policies and knew how to abide by their stated purpose.   What is more, this belief was entirely warranted absent any actual, or even constructive, knowledge of shortcomings that could have prompted the City to discover its policies and training were inadequate.

39.     Nothing in Plaintiff's Amended Complaint offers any support for his allegations, or identifies a specific obvious need for training, a defect in training of any of the City's officers, or a link explaining how such a need for training impacted Plaintiff's encounter with Officer

Gonzalez on December 31, 2016, i.e., the alleged constitutional violation.  There is no evidence revealing that the City was aware or should have been aware of any lack of training, let alone proof of conscious disregard, sufficient to establish that the City was deliberately indifferent.  To reiterate, mere conclusory allegations that training opportunities existed and the Department therefore could have always demanded more training of its officers is patently insufficient to establish a claim for failure to adopt a policy. *See City of Canton*, 489 U.S. at 391; *Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988); *Snyder*, 142 F.3d at 799.

40.     As the summary judgment evidence does not create a material issue of fact regarding the adequacy of the City's police officer training, summary judgment is appropriate.

### iv.   <u>The City did not ignore the need for supervision, nor did it fail to supervise, or adequately supervise, its officers</u>.

41.     Plaintiff might also contend that the City was deliberately indifferent in that it ignored the serious need for supervision of Officer Gonzalez regarding the use of force as well as failed to supervise and/or inadequately supervised him regarding the proper use of force.

42.     To establish a failure to supervise claim, Plaintiff must prove that: (1) Officer Gonzalez's supervisor failed to supervise him; (2) there is a causal connection between the alleged failure to supervise and the alleged violation of Plaintiff's constitutional rights; and, (3) the failure to supervise constituted deliberate indifference to Plaintiff's constitutional rights, tantamount to a "policy" of the municipality. *See, e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 332 (5th Cir.2008); *Pineda*, 291 F.3d at 331-32; *see also City of Canton*, 489 U.S. at 388-90.  Again, the essential element of deliberate indifference, a finding of conscious disregard of known or obvious consequences of a failure to act on the part of the municipality is required—and, here, is utterly

missing. *See Bryan County*, 520 U.S. at 410 (1997); *see generally Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001) (recognizing that proof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such a lack of supervision can constitute deliberate indifference).  Plaintiff must generally demonstrate that the municipality or supervisor had notice of a pattern of prior acts "fairly similar to what ultimately transpired." *Davis*, 406 F.3d at 383. Plaintiff has failed to do so.

43.     There is no evidence that the Department supervised Officer Gonzalez in a manner that amounted to deliberate indifference to Plaintiff's constitutionally protected rights.  Further, there is no evidence that the defendant officers' supervisor failed to supervise each officer or there is a causal connection between the alleged failure to supervise and the alleged violation of Plaintiff's constitutional rights.  To the contrary, the summary judgment evidence establishes that the Officer Gonzalez was adequately supervised.

44.     Again, the City's policies and procedures forbid its officers from using excessive force. (*Ex. 2-A*).  Moreover, neither the City nor the CCPD ignore use-of-force incidences and/or complaints of excessive force, nor is there a policy of encouraging, acquiescing, sanctioning or permitting its officers to use excessive force upon its citizens. (*Pace Aff.*, *Ex. 2-A; Ex. 2-F; Ex. 2-G*).  When a person complains to the Department that s/he has been treated improperly, the CCPD investigates the complaint, pursuant to its Personnel Complaint Procedure. (*Ex. 2-F, at 8*).  If, after the investigation is concluded, a complaint is deemed substantiated, corrective action is taken. (*Ex. 2-A; Ex. 2-F, at 8-9*).  Plaintiff has never initiated a complaint with the Department regarding improper treatment or use excessive force in any instance.  Further, no investigation through the CCPD's Internal Affairs Division was warranted.

22

45.     Summary judgment is appropriate as Plaintiff cannot raise a material issue of fact regarding this aspect of Plaintiff's claim. Plaintiff has no evidence of a City policy, practice and/or custom that allows the CCPD or its officers use excessive force against citizens.

46.     As with his inadequate training claim, Plaintiff has thus far not advanced, nor can he, any specific factual backing to illustrate how the City's deficient supervision could have precipitated or provoked the events of December 31, 2016.  There being no summary judgment evidence to create a material issue of fact regarding the constitutional adequacy of the City's supervision of its officers, summary judgment is appropriate.

## V.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Movant, the City of Corpus Christi, respectfully requests that this Court grant this Motion pursuant to Federal Rule of Civil Procedure 56 and dismiss with prejudice Plaintiff's claim.

Respectfully submitted,

By:     **/s/ Lilia K. Castro**
        **Lilia K. Castro**
        ASSISTANT CITY ATTORNEY
        State Bar I.D. No. 24072122
        Fed. I.D. No. 1419334
        ATTORNEY IN CHARGE FOR
        DEFENDANT CITY OF CORPUS CHRISTI
        CITY OF CORPUS CHRISTI
        LEGAL DEPARTMENT
        P.O. Box 9277
        Corpus Christi, Texas 78469-9277
        Telephone:  (361) 826-3360
        Facsimile:  (361) 826-3239
        Liliac@cctexas.com

23

## <u>CERTIFICATE OF SERVICE</u>

       I do hereby certify that a true and correct copy of the above and foregoing document was served electronically on the following Filing User(s), through the Notice of Electronic Filing, on this 4th day of November, 2019:

***<u>Via Electronic Filing and Service:</u>***
Charles C. Smith
Law Office of Charles C. Smith
615 N. Upper Broadway, Suite 1710
Corpus Christi, Texas 78401

John B. Martinez
Jessica J. Pritchett
Hilliard Martinez Gonzales, LLP
719 S. Shoreline, Suite 500
Corpus Christi, Texas 78401

                                    **/s/ Lilia K. Castro**
                                      **Lilia K. Castro**